PD-1273-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/24/2015 5:06:33 PM
Accepted 9/30/2015 11:12:10 AM
ABEL ACOSTA
CLERK

NO._____

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS
## AUSTIN, TEXAS

---

NO. 01-13-00784-CR
IN THE COURT OF APPEALS FOR THE
FIRST DISTRICT OF TEXAS
AT HOUSTON

---

TRIAL COURT NO. 1295246
IN THE 180TH DISTRICT COURT
OF HARRIS COUNTY, TEXAS

---

ALFRED CARL ALLEN,
*Appellant*

VS.

THE STATE OF TEXAS,
*Appellee*

---

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

FILED IN
COURT OF CRIMINAL APPEALS

September 30, 2015

ABEL ACOSTA, CLERK

Nicole DeBorde
BIRES SCHAFFER AND DEBORDE
SBOT 00787344
712 Main Street, Suite 2400
Houston, Texas 77002
(713) 228-8500 – telephone
(713) 228-0034 – facsimile
Nicole@BSDLawFirm.com

Attorney for Appellant,
Alfred Carl Allen

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. PROC. 68.4(c), appellant requests oral argument.

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................1

INDEX OF AUTHORITIES...........................................................................2

STATEMENT REGARDING ORAL ARGUMENT ....................................1

STATEMENT OF THE CASE........................................................................4

STATEMENT OF PROCEDURAL HISTORY...............................................5

GROUND FOR REVIEW NUMBER ONE....................................................6

**Did the First Court of Appeals decide an important question of state law that has not been, but should be, settled by this Court, in holding Appellant did not suffer harm when the trial court erroneously admitted an improper outcry witness?**

ARGUMENT ..................................................................................................6

PRAYER FOR RELIEF ................................................................................8

CERTIFICATE OF COMPLIANCE..............................................................9

CERTIFICATE OF SERVICE .....................................................................10

APPENDIX ................................................................................................ A-1

1

# INDEX OF AUTHORITIES

**<u>CASES</u>**                                                        **<u>PAGE</u>**

*Allen v. State*, 01-13-00784-CR, 2015 WL 5076288, *13 (Tex. App.—Houston [1st Dist.] Aug. 27, 2015, no. pet. h.)...................................................................5

*Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999)...............................6

## **<u>STATUTES AND RULES</u>**

Tex. Code Crim. Proc. art. 38.072...........................................................................6

Tex. R. App. P. 66.3.................................................................................................8

Tex. R. App. P. 68.4.................................................................................................3

Tex. R. Evid. 803.....................................................................................................7

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 68.4(a), a complete list of the names and all interested parties is provided below:

| | |
|---|---|
| Appellant: | Alfred Carl Allen<br>Mark W. Stiles Unit<br>TDCJ No. 01884266<br>3060 FM 3514<br>Beaumont, TX 77705 |
| Presiding Judge: | Hon. Marc Brown<br>Presiding Judge<br>180th District Court<br>1201 Franklin, 18th Floor<br>Houston, TX 77002 |
| Trial Prosecutor: | Katie Davis<br>Assistant District Attorney<br>Harris County District Attorney's Office<br>1201 Franklin, Suite 400<br>Houston, Texas 77002 |
| Defense Counsel: | Danny K. Easterling<br>Attorney at Law<br>1018 Preston, 6th Floor<br>Houston, Texas 77002 |
| State's Appellate Counsel: | Hon. Devon Anderson<br>Harris County District Attorney<br>1201 Franklin<br>Houston, Texas 77002 |
| Appellant's Counsel: | Nicole DeBorde<br>Bires, Schaffer & DeBorde<br>Attorney at Law<br>712 Main Street, Suite 2400<br>Houston, Texas 77002 |

TO THE COURT OF CRIMINAL APPEALS:

## STATEMENT OF THE CASE

Alfred Carl Allen (Appellant) relocated to Houston, Texas as a result of Hurricane Katrina. (2 R.R. 71). Appellant became a handyman and close personal friend to neighbor Carolyn Lang, the complainant's grandmother, who thought of Appellant as a son. The complainant lived with her grandmother during the summer of 2008, and first reported to her grandmother that Appellant had abused her that same summer. Neither the grandmother nor the complainant's mother believed the story.

While in eight grade, the complainant kept a journal as part of an English class assignment. (2 R.R. 170-71). English teacher had read the journal, which contained allegations of sexual abuse, and reported it to school counsel Kelly Minor (Minor). (2 R.R. 128-29). According to Minor, the improperly designated outcry witness, the complainant reported in the fall of 2010, that her grandmother was having Appellant fix a light fixture when they went upstairs to get something to help. (2 R.R. 97; 123). Minor testified that once upstairs Appellant took the complainant's "clothes off and raped her." (2 R.R. 97). Minor reported the allegation of abuse to Child Protective Services and contacted the complainant's mother. (2 R.R. 99; 142).

4

# STATEMENT OF PROCEDURAL HISTORY

On February 11, 2011, Appellant was charged by indictment in Cause No. 1295246 with Super Aggravated Sexual Assault of a Child alleged to have occurred on or about July 1, 2008. (C.R. 19). On August 12, 2013, Appellant elected a nonjury trial and the case proceeded before the Honorable Marc Brown. (2 R.R. 7). On August 13, 2013, Appellant was found guilty of the lesser-included offense of Indecency with a Child by Contact. (C.R. 124 - 25; 6 R.R. 87). Appellant pleaded not true to the pair of enhancement paragraphs contained in the indictment. (6 R.R. 8). The trial court found one enhancement paragraph true and assessed punishment at twenty-five (25) years in the Texas Department of Criminal Justice – Correctional Institutions Division. (6 R.R. 87). Appellant gave timely notice of appeal. (C.R. 134).

The First Court of Appeals affirmed the trial court's judgment. *Allen v. State*, 01-13-00784-CR, 2015 WL 5076288, *13 (Tex. App.—Houston [1st Dist.] Aug. 27, 2015, no. pet. h.). No motion for rehearing was filed. Appellant now timely petitions this Honorable Court for discretionary review. Appellant presents one (1) ground for review before this Honorable Court.

<u>APPELLANT'S FIRST GROUND FOR REVIEW</u>

**Did the First Court of Appeals decide an important question of state law that has not been, but should be, settled by this Court, in holding Appellant did not suffer harm when the trial court erroneously designated an improper outcry witness under article 38.072 Texas Code of Criminal Procedure?**

<u>ARGUMENT</u>

The First Court of Appeals erroneously held Appellant did not suffer harm when the trial court erroneously designated an improper outcry witness such that review is warranted pursuant to Tex. R. App. P. 66.3(b). Appellant complained on appeal in Issue Number One the trial court erred by designating Kelly Minor ("Minor") as the outcry witness pursuant to article 38.072 of the Texas Code of Criminal Procedure. The First Court of Appeals held the trial court's designation of Minor as the outcry witness was error; however, the Court found the error harmless because "[t]he trial court also, without objection, admitted into evidence… essentially the same details about the offense" as Minor's erroneously admitted testimony. *Allen v. State*, 01-13-00784-CR, 2015 WL 5076288, at *8 (Tex. App.—Houston [1st Dist.] Aug. 27, 2015, no. pet. h.).

In holding Appellant did not suffer harm, the First Court of Appeals relied on *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999), for the proposition that, "[a]n erroneous admission of evidence does not constitute reversible error if the same or similar evidence is admitted without objection at

6

another point in the trial." *Brooks*, 990 S.W.2d at 287. In *Brooks*, this Court explained, "any error in admitting the [complained of] evidence was harmless in light of other properly admitted evidence proving the same fact." *Id*. The defendant, who was charged with capital murder, complained on appeal the trial court erred in allowing admission of hearsay evidence from a witness. *Id*. at 286. This Court explained the trial court did not abuse its discretion but if it had, the error was harmless "in light of other properly admitted evidence proving the same fact." *Id*. at 287.

The First Court of Appeals' reliance on *Brooks* is misplaced. In *Brooks* the defendant was charged with capital murder and the complained of testimony was admitted under a hearsay exception found in Rule 803 of the Texas Rules of Evidence. Unlike *Brooks*, in this case Appellant was convicted of indecency with a child and the complained of testimony was admitted under the hearsay exception found in article 38.072 of the Texas Code of Criminal Procedure.

This Court has not settled whether the harm analysis conducted pursuant to the erroneous admission of evidence under article 38.072 should constitute harmless error when "the same or similar evidence is admitted without objection at another point in the trial." *See Allen*, 2015 WL 5076288, at *8; *Brooks*, 990 S.W.2d at 287. Therefore, in conducting a harm analysis pursuant to *Brooks* that includes whether the same or similar evidence is admitted without objection at

7

another point in the trial, the First Court of Appeals decided an important question of state law that has not been, but should be, decided by this Court.

Accordingly, review is warranted pursuant to Tex. R. App. P. 66.3(b).

<u>PRAYER FOR RELIEF</u>

WHEREFORE, PREMISES CONSIDERED, Appellant prays that this Honorable Court grant this Petition for Discretionary Review. Following the grant of review, Appellant prays that the judgment of the Court of Appeals be reversed and rendered, or reversed and a new trial ordered, or the case remanded for further review.

Respectfully submitted,

*/s/ Nicole DeBorde*
Nicole DeBorde
BIRES SCHAFFER AND DEBORDE
Texar Bar No. 00787344
712 Main Street, Suite 2400
Houston, Texas 77002
(713) 228-8500 – Telephone
(713) 228-0034 – Facsimile
Email: Nicole@BSDLawFirm.com

Attorney for Appellant,
Alfred Allen

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9 of the Texas Rules Appellate Procedure, the undersigned counsel of record certifies that the Petition for Discretionary Review contains 1158 words.

*/s/ Nicole DeBorde*
Nicole DeBorde

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of Appellant's petition for discretionary review has been either personally served upon or mailed by U.S. Postal Service certified mail, return receipt requested, on September 24, 2015 to the following persons:

Devon Anderson
District Attorney
1201 Franklin, Suite 600
Houston, Texas 77002

State Prosecuting Attorney
P.O. Box 12405
Austin, Texas 78711

Respectfully submitted,


*/s/ Nicole DeBorde*
Nicole DeBorde

# APPENDIX



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-13-00784-CR**

_____

**ALFRED CARL ALLEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Case No. 1295246**

**MEMORANDUM OPINION**

The trial court found appellant, Alfred Carl Allen, guilty of the offense of

indecency with a child,[1] found true the allegation in an enhancement paragraph that

---

[1]     *See* TEX. PENAL CODE ANN. § 21.11(a) (Vernon 2011).

he had previously been convicted of a felony offense, and assessed his punishment at confinement for twenty-five years. In five issues, appellant contends that the evidence is legally insufficient to support his conviction and the trial court erred in admitting the complainant's outcry statement offered by a school counselor, extraneous-offense evidence, and, during the punishment phase of trial, evidence of a prior felony conviction from the State of Louisiana to prove the enhancement allegation.

We affirm.

## Background

The complainant testified that when she was eleven years old, she spent the summer at her grandmother's apartment. One day, while she and her grandmother were "in front of her apartment on the steps," appellant, who was moving into a neighboring apartment, "walked over" and talked with her grandmother. He "kept staring at" the complainant and made her "feel real uncomfortable." Over time, appellant and her grandmother "got close," and he "started coming to her house" and assisting her grandmother with running errands. The complainant noted that he was "always over there" and "kept staring" at her.

On one occasion, as the complainant was walking into the kitchen, appellant was standing in the doorway and "touched [her] on [her] breast" as she passed by him. After she told her grandmother, who did not believe her, the complainant hid

2

under a dining room table. Appellant found her, "touched [her] on [her] breasts again," and then "touched [her] below [her] belt, [her] vagina." After the complainant began screaming, appellant left. When she told her brother what had happened, he did not believe her.

The complainant further testified that "[o]n the day that [she] got raped," her grandmother, who was cooking, sent her to appellant's apartment to retrieve something. After seeing appellant's fiancée and children leave their apartment, the complainant knocked on the door, and appellant answered and invited her inside. She declined, but he "told [her] to come in the house." After she stepped inside, appellant closed the door and locked it, "picked [her] up," and "threw" her on the floor. He then "pulled down" his "gym shorts," pulled down her shorts and underwear, and "raped her" by placing "his penis inside [her] vagina." The complainant explained that appellant held her down with his "body weight" while she screamed and hit him, "trying to push him off." And appellant "smil[ed]" at her, like he "thought it was funny."

After a "couple of" minutes, the complainant screamed louder, and appellant got off of her. She then ran home and told her grandmother that "Mr. Alfred [had] raped [her.]" However, her grandmother did not believe her. At some point after the incident, "it wasn't that day," appellant told the complainant that if she told anybody about what he had done, he would "hurt" her and her grandmother.

3

Approximately one year later, the complainant wrote about appellant's actions in her journal at school. After her teacher read the journal, the complainant spoke with her school counselor, who then contacted her mother. The complainant explained that, although she could not remember exactly when, she had previously told her mother, while they were in a car together talking about dating, about what appellant had done to her. When the complainant told her mother that she did not want her to date because she did not want "the same thing to happen" to her, her mother asked the complainant what she meant. And the complainant responded, "Mr. Alfred raped me." When her mother asked why she had not told her sooner, the complainant stated that she was afraid "something" would happen to her.

On cross-examination, the complainant could not recall whether appellant had abused her during the summer of 2008 or 2009. She asserted that he threw her down, "pulled off his shorts," unbuttoned her shorts and removed them, and then "fell on top of her." In contrast to her prior testimony, the complainant stated that she did not "scream for help" because "nobody can hear you at an apartment." And she asserted that appellant had threatened her "while he was on top of [her]." Although the complainant at one point stated that her mother "didn't know" about the abuse "until [the school counselor] told her," she then stated that her mother "already knew but she forgot."

Kelly Minor, the complainant's school counselor, testified that she spoke with the complainant in the fall of 2010 after her teacher had become concerned about her school journal entry. She told Minor that "two years prior," "during the summertime," while she was staying with her grandmother, appellant would "come over and help her [grandmother] with things that she physically could not do for herself." "[D]uring one occasion when he was there . . . working on a light fixture," he "needed [the complainant] to come back to his apartment to get something else so that he could finish the project and during that time that he raped her." When Minor asked the complainant whether he had "penetrated her," she replied that "he took her clothes off of her and that there was . . . vaginal penetration." Minor made a report to the Texas Department of Family and Protective Services ("DFPS") and contacted the complainant's mother. Minor noted that the complainant's mother had "brushed [her] off," saying that "there was not penetration" and appellant had "only laid on top of" the complainant.

Houston Police Department Officer N. Barnes, who was assigned to the Harris County Children's Assessment Center ("CAC"), testified that after DFPS referred the complainant's case to CAC, she scheduled a forensic interview and medical examination of the complainant. Barnes also interviewed the complainant's mother and father, Minor, and appellant. The complainant's mother explained that the complainant did stay with her grandmother during the summer

5

of 2009, noting that her grandmother had since "passed away." The complainant's mother "didn't feel like [anything] had happened" with appellant and "didn't see any need to go any further with it."

CAC forensic interviewer L. Holcomb testified that on January 11, 2011, she interviewed the complainant and found her to be "forthcoming and very narrative when disclosing the events." Dr. L. Thompson, Jr., director of therapy and psychological services at CAC, testified that it is not unusual for there to be a delayed outrcry after a child has told someone about sexual abuse, but was not believed.

Dr. B. Isaac, a CAC staff physician, testified that she examined the complainant at a hospital in January 2011. After the trial court admitted into evidence, without objection, the complainant's medical records, Isaac testified about its contents and the "directed interview" that she had conducted with the complainant. Issac explained that although she found no physical evidence of injury during the examination, none was expected given that it had been two years since the alleged contact.

## Sufficiency of the Evidence

In his fifth issue, appellant argues that the evidence is legally insufficient to support his conviction because it does not establish that the offense was

"committed on or before the date alleged in the indictment" or he "engaged in sexual contact with [the] complainant."

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id*.

A person commits the offense of indecency with a child by contact if the person, with a child younger than seventeen years of age and not the person's spouse, engages in sexual contact with the child or causes the child to engage in sexual contact. TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon 2011). "Sexual contact" means the following acts, "if committed with the intent to arouse or

7

gratify the sexual desire of any person: . . . any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child." *Id.* § 21.11(c)(1). The specific intent required may be inferred from a defendant's conduct and remarks, and all of the surrounding circumstances. *Bazanes v. State*, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth 2010, pet. ref'd). And the uncorroborated testimony of a child complainant, standing alone, is sufficient to support a conviction for indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon Supp. 2014); *Bazanes*, 310 S.W.3d at 40; *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Here, the complainant testified that when she was eleven years old, appellant "pulled down" his "gym shorts," pulled down her shorts and underwear, and "raped her," by placing "his penis inside [her] vagina." This evidence establishes the offense of indecency with a child.[2] *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Jones*, 428 S.W.3d at 169.

As noted by appellant, the State did not present medical, physical, or other forensic scientific evidence to prove that he had committed the offense of indecency with a child. Under the circumstances, however, the lack of medical or

---

[2] Although appellant stood accused by indictment of the offense of aggravated sexual assault of a child, the trial court found him guilty of the lesser-included offense of indecency with a child. *See Cunningham v. State*, 726 S.W.2d 151, 154–55 (Tex. Crim. App. 1987) (holding indecency with a child lesser-included offense of aggravated sexual assault of a child when both offenses predicated on same act).

8

scientific evidence does not render the evidence supporting appellant's conviction legally insufficient. *See Jones*, 428 S.W.3d at 169 ("The State has no burden to produce any corroborating or physical evidence."); *Washington v. State*, 127 S.W.3d 197, 205 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd) ("The jury could have reasonably believed that [the complainant] was sexually assaulted, but that, due to the circumstances of the assault, there was no physical evidence of the assault remaining.").

Appellant further asserts that the complainant "lacked credibility" and presented "differing accounts of her story." However, the trier-of-fact resolves all conflicts in the evidence and is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *IslasMartinez v. State*, 452 S.W.3d 874, 877 (Tex. App.—Dallas 2014, pet. ref'd).

Moreover, it is well-established that an indictment need not allege, and the State need not prove, that an offense was committed on a specific date. *See Garcia v. State*, 981 S.W.2d 683, 685 (Tex. Crim. App. 1998); *Scoggan v. State*, 799 S.W.2d 679, 680 n.3 (Tex. Crim. App. 1990); *see also* TEX. CODE CRIM. PROC. ANN. art. 21.02(6) (Vernon 2009). Rather, the date alleged or proved need only be "anterior to [the] presentment of [the] indictment" and within the period of limitations. *Scoggan*, 799 S.W.2d at 680 n.3; *Worley v. State*, 870 S.W.2d 620,

9

622 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Appellant "does not deny [that] he was put on notice that he should prepare for proof [that] the event happened at any time within the statutory period of limitations." He argues, rather, that the "dates proven at trial (summer of 2008, 2009, and 2010) are impossible dates because [he] was no longer living at the location where the [offense] is alleged to have occurred." Although the evidence established that appellant was not listed on a lease at the apartment complex at the time of the offense, the complainant's testimony established that he was, at the time of the offense, living at the apartment complex with his fiancée.

Viewing all of the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction.

We overrule appellant's fifth issue.

## Outcry Statement

In his first issue, appellant argues that the trial court erred in admitting into evidence the complainant's outcry statement to Minor because she had already made "statements that described the offense in a discernible manner" to her mother "at least a year before talking to Minor." *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon Supp. 2014).

We review trial court's decision to admit evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). We will not reverse a trial court's evidentiary ruling under article 38.072 unless it falls outside this zone of reasonable disagreement. *Bautista v. State*, 189 S.W.3d 365, 367 (Tex. App.—Fort Worth 2006, pet. ref'd). We uphold a trial court's evidentiary ruling if it is correct on any theory of law applicable to the case. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

A statement made by a child fourteen years of age or younger who is the victim of certain offenses, including indecency with a child, is exempted from the hearsay rule if it was made by the person against whom the act was committed and the witness testifying about the statement is "the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense." TEX. CODE CRIM. PROC. ANN. art. 38.072; *see also Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). The complainant's statement must be "more than words which give a general allusion that something in the area of child abuse [is] going on"; rather, it must describe the alleged offense in some discernible manner. *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990).

11

The trial court must "find, in a hearing conducted outside the presence of the jury, that the statement is reliable based on time, content, and circumstances of the statement." TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(2). And the child must testify or be available to testify "at the proceeding in court or in any other manner provided by law." *Id.* art. 38.072, § 2(b)(3).

Here, the trial court conducted a hearing on the admissibility of the complainant's outcry statements to her mother and Minor. Minor testified that in the fall of 2010, the complainant's teacher brought the complainant to her office regarding the complainant's journal entry. Minor testified, in pertinent part, as follows:

> [Minor]: [The complainant] explained to me that in the summer two years before, . . . she was with her grandmother and . . . there was a man that was a friend of her grandmother's and that the man had raped her. She had gone to the man's apartment and that he had raped her. I asked her if there was penetration and she said yes.
>
> . . . .
>
> I wanted to know had she told anyone about it. She did tell me that she had told her grandmother and her mother, but her father did not know.
>
> [State]: And specifically when she said she was raped, would you please describe to the Court exactly what she told you had happened.
>
> [Minor]: She said that her grandmother was having some—a light fixture or something replaced by this man Alfred Allen. And that he was a 28-year-old guy that would help out

12

her grandmother because her grandmother was ill. And that her grandmother thought highly of him. And that he was changing a light fixture or something. They went back to his apartment to get something to help. And in the process that he raped her, that he took her clothes off and raped her.

[State]: And when they went back to his apartment did she give you any details of what happened inside of the apartment?

[Minor]: Just that he took her clothes off and that there was penetration.

[State]: Okay. And when you say "penetration," penetration of what?

[Minor]: That he inserted his penis inside of her vagina.

[State]: Okay. Did she say—describe anything else in that incident when she was talking to you about the rape itself?

[Minor]: Not that I recall.

Minor explained that she then contacted DFPS and the complainant's mother.

The complainant's mother testified that she remembered having received a telephone call from someone at the complainant's school "about two years ago," in the fall of 2010. She "vaguely remembered" an occasion prior to that when the complainant, while riding in the back seat of the car, had "casually mentioned" that "her grandmother [had] sent her to borrow some sugar from her neighbor," appellant, and "he pulled her into the house, into the apartment, pulled her shorts

13

down, and assaulted her." The complainant's mother further testified, in pertinent part, as follows:

> [State]: So after you start questioning her, what exactly does she say to you happened, that you can remember?
>
> [Mother] That he assaulted her. That he, you know, raped her.
>
> [State]: Okay. And did she use the word "raped"?
>
> [Mother]: She used the word "raped."
>
> [State]: And did you ask her any questions after that?
>
> [Mother]: Well, after that—after I asked her, you know, like I said, she kind of stopped talking about it. We didn't talk anymore about it. . . .
>
> [State]: At that time when she said that she was raped what—did she describe what had happened or just say that she was raped?
>
> [Mother]: Well, when I asked her about it, about him pulling her into the house, pulling her shorts down, and getting on top of her.
>
> [State]: Okay. And what—did she say that—
>
> [Mother]: She said—she said, No. That's about all I can remember, I mean.
>
> [State]: Okay. Did she ever tell you that he put his penis in her vagina?
>
> [Mother]: Yes.
>
> [State]: Okay. At this point did you call the police?

14

[Mother]: No, I did not. *Actually the—well, the penis in the vagina, that was another time.*

. . . .

[State]: And at that point what did she tell you about? Did she tell you . . . that he put his penis in her vagina at that time?

[Mother]: *Not at this time. No, that came out later.*

[State]: What does she tell you at that time?

[Mother]: That she—when she went to get the sugar, that he had pulled her in. No one was there. He pulled down her shorts and, you know, *the penis in the vagina did not come into it.* I asked her and we didn't go into detail. . . .

[State]: So all she told you at that time was that he pulled her into the apartment; is that right?

[Mother]: Yes.

[State]: And that—and then he pulled down her pants?

[Mother]: Yes.

. . . .

And she said he threatened her then.

[State]: Okay. And that's all in this conversation?

[Mother]: That's this conversation in the car, yes.

[State]: And you never asked her if, when he pulled down her pants, if he raped her or put his penis in her vagina?

[Mother]: She froze up and, you know, she—she froze up. She did not talk to me anymore about it. . . .

. . . .

> [State]: . . . About, between the car right where she is telling you and getting the phone call from [Minor] at the middle school, how much time had passed?
>
> [Mother]: I am not sure. I would say about close to a year maybe.
>
> [State]: And in that time period you hadn't talked to [the complainant] again about the assault from [appellant]?
>
> [Mother]: No. . . .

(Emphasis added.)

On cross-examination, however, the complainant's mother again testified that the complainant, during a conversation in their car about year prior to the telephone call from the complainant's school counslor, said that her grandmother sent her to borrow some sugar from appellant, and when she went to his apartment, he "pulled her shorts down" and "raped her." And the complainant's mother understood the word "rape" to mean a "sexual assault where [appellant] had put his penis in the vagina."

The State argued that Minor is the proper outcry witness under article 38.072 because the complainant had given her a "more detailed account—actually penis to vagina—[which is] actually an important detail in this case, since the allegation is sexual organ contacting sexual the defendant's sexual organ." And it asserted that Minor was the "first person who could remember and relate what was actually said by the witness."

16

Appellant argued that the complainant's mother is the proper outcry witness because she is "the first adult" to whom the complainant "told the details of this offense" and "specific detail about a penis in a vagina" was not required. He asserted that the complainant's mother "clearly understood" the words, "[h]e pulled my shorts down and raped me," to "mean sexual intercourse and some sort of alleged force and sexual assault." And the complainant made the statement to her mother "clearly a year prior to [Minor] hearing it in the counselor's office at school."

The trial court found:

> [A]lthough there is clearly more than one outcry witness in this matter, as is contemplated by Garcia versus State, . . . [Minor] is the outcry witness appropriate for this matter inasmuch as she was told more specific details than was told to the complaining witness's mother. So for purposes of the hearing—or for purposes of the trial, rather, the Court will allow [Minor] to be the outcry witness . . . .

There may be only one outcry witness to a complainant's statement about a single event. *Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd) (noting "outcry witness is not person-specific, but event-specific"). And the proper outcry witness is not to be determined by simply comparing the statements made by a complainant to different individuals and then deciding which person received the most detailed statement about the offense. *Elder v. State*, 132 S.W.3d 20, 26 (Tex. App.—Fort Worth 2004, pet. ref'd).

17

Here, Minor and the complainant's mother testified about the complainant's statements to them about a single event. The complainant's statement to her mother that "her grandmother [had] sent her to borrow some sugar from her neighbor," appellant, "and he pulled her . . . into the apartment, pulled her shorts down," and "raped her," which her mother understood to mean, a "sexual assault where [appellant] had put his penis in the vagina," constituted more than a "general allusion" that something in the area of child abuse had occurred and contained sufficient information about the nature of the acts and the perpetrator to meet the requirements of article 38.072. *See Sanchez*, 354 S.W.3d at 480, 484, 486 (holding complainant's statement defendant "picked her up, took her into the other room and . . . put his penis in her" admissible under article 38.072). Although the complainant's mother had difficulty in remembering dates and specifics, "the credibility of the outcry witness is not a relevant issue at a hearing to determine admissibility of an outcry." *See id.* at 487–88 (article 38.072 "does not charge the trial court with determining the reliability of the statement based on the credibility of the outcry witness").

Accordingly, we hold that the trial court erred in admitting Minor's testimony regarding the complainant's outcry statement made to her. *See Brown v. State,* 189 S.W.3d 382, 386–87 (Tex. App.—Texarkana 2006, pet. ref'd) (concluding CAC counselor not proper outcry witness because child complainant

18

had previously described offense in discernible manner to her father and his girlfriend); *Reed v. State*, 974 S.W.2d 838, 841 (Tex. App.—San Antonio 1998, pet. ref'd) (rejecting argument CPS worker was proper outcry witness because complainant's statements to her were "more detailed").

Having concluded that the trial court so erred, we next consider whether the error requires reversal. The admission of inadmissible hearsay constitutes nonconstitutional error and must be considered harmless if an examination of the record as a whole provides reasonable assurance that the error did not influence the verdict or had but a slight effect. *See* Tex. R. App. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). An erroneous admission of evidence does not constitute reversible error if the same or similar evidence is admitted without objection at another point in the trial. *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999).

Here, the record reveals that prior to Minor's testimony, Dr. Isaac, without objection, testified in detail about how the complainant, in her interview with Isaac, gave her substantially the same account of the offense as she gave to Minor. Specifically, Isaac testified, in pertinent part:

[Isaac]: When asked why she was here at the clinic, she reported, Because I told my mom about the rape. . . .

[State]: So what did you ask her next?

[Isaac]: What do you mean by rape?

19

[State]: And what did she respond?

[Isaac]: When somebody forces to have sex with you.

[State]: And what is the next question that you ask?

[Isaac]: Who did that to you?

[State]: And what does she respond?

[Isaac]: Some man. Allen or Alfred. I was 11. I was staying with my grandmother for the summer. And this guy, he is in his 20's. He was my grandma's friend or kind of like her son. I thought he looked at me funny, he gave me a look made me feel uncomfortable. He had raped me. I knocked on his door to get something for my grandmother. She told me to go over and ask him for something. His fiancée and kids left. He gave me what my grandmother asked, then he grabbed me and he pulled me on the floor. He fell on top of me. He pulled down his red shorts and he pulled down mine. He stuck his penis inside my vagina.

The trial court also, without objection, admitted into evidence the complainant's CAC medical records that contain essentially the same details about the offense. *See Duncan v. State*, 95 S.W.3d 669, 671–72 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (improper admission of testimony harmless because similar testimony admitted through complainant, pediatrician, and medical records).

After examining the record as a whole, we conclude that the trial court's error in admitting Minor's testimony about the complainant's outcry statements to her did not have a substantial and injurious effect or influence in determining the

outcome of trial. *See Leday v. State*, 983 S.W.2d 713, 717–18 (Tex. Crim. App. 1998). Accordingly, we hold that the trial court's error was harmless.

We overrule appellant's first issue.

**Extraneous-offense Evidence**

In his fourth issue, appellant argues that the trial court erred in admitting extraneous evidence of his conduct with the complainant because it was not relevant and its probative value was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403, 404(b). As noted above, we review a trial court's decision to admit evidence for abuse of discretion. *Martinez*, 327 S.W.3d at 736.

Evidence of a defendant's bad character is generally not admissible to prove that he acted in conformity therewith. *See* TEX. R. EVID. 404(b). When a defendant is charged with indecency with a child, however, evidence of a previous offense or bad act involving the same child may be admissible, as follows:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1)    the state of mind of the defendant and the child; and
>
> (2)    the previous and subsequent relationship between the defendant and the child.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(b), § 2(a)(1)(C) (Vernon Supp. 2014).

21

Here, the complainant testified that once, as she was walking into the kitchen at her grandmother's apartment, appellant, who was standing in a doorway, "touched [her] on [her] breast" as she passed by him. After she hid under a dining room table, appellant found her, "touched [her] on [her] breasts again," and then "touched [her] below [her] belt, [her] vagina." This testimony was relevant to demonstrate appellant's state of mind and relationship with complainant. *See Sanders v. State*, 255 S.W.3d 754, 759 (Tex. App.—Fort Worth 2008, pet. ref'd).

Even if evidence is admissible under article 38.37, a trial court still has "a nondiscretionary obligation to weigh the probative value of the evidence against the unfair prejudice of its admission" when, as here, a defendant objects to the admission of extraneous offense evidence based on rule 403. *See Martines v. State*, 371 S.W.3d 232, 246–47 (Tex. App.—Houston [1st Dist.] 2011, no pet.). When determining whether the danger of unfair prejudice in the admission of evidence substantially outweighs the probative value of the evidence, we consider (1) the probative value of evidence, (2) the potential of the evidence to impress the jury in some irrational but indelible way, (3) the time during trial required to develop the evidence, and (4) the State's need for the evidence. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005); *see also Smith v. State*, 355 S.W.3d 138, 153–54 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). If the trial court overrules the objection, we assume that it conducted the balancing test and

22

determined that the evidence was admissible. *Martines*, 371 S.W.3d at 247. The trial court need not perform this balancing test on the record. *Id.*

Here, the first factor of the balancing test weighs in favor of admission of the extraneous-act evidence because it was probative of appellant's state of mind and his relationship with the complainant and helped explain why the complainant delayed her outcry. The second and third factors also weigh in favor of admission of the evidence. The complainant's testimony about the extraneous act was no more detailed than her testimony about how appellant had assaulted her in his apartment. As a result, the complainant's testimony regarding the "rape" in appellant's apartment overshadowed any potential inflammatory response to testimony about the extraneous act. And, as appellant concedes, the State spent "very little time" in "developing the article 38.37 evidence." And the fourth factor weighs in favor of admission of the evidence because the State had no other evidence that could similarly establish appellant's state of mind and his relationship with the complainant.

Accordingly, we hold that the trial court did not err in admitting the complained-of extraneous evidence.

We overrule appellant's fourth issue.

## Punishment Evidence

In his third issue, appellant argues that the trial court erred in admitting into evidence, during the punishment phase of trial, State's exhibit 17, which consists of court records concerning his prior conviction of a felony offense in the State of Louisiana, because the records were not authenticated and violated his Sixth Amendment right to confront the witnesses against him. *See* U.S. CONST. amend. VI; TEX. R. EVID. 901, 902. Again, we review a trial court's decision to admit evidence for an abuse of discretion. *Martinez*, 327 S.W.3d at 736.

The trial court admitted, as a "certified public record,"[3] State's exhibit 17, which consists of court records from the Clerk of the Criminal District Court of Orleans Parish, Louisiana, including a bill of information, a computerized printout of the court's records, and an extract of court minutes.

Extrinsic evidence of authenticity "as a condition precedent to admissibility [of documents] is not required" with regard to:

> (4)  Certified Copies of Public Records. A copy of an official record—or a copy of a document that was recorded or filed in a public office as authorized by law—if the copy is certified as correct by:
>
> > (A)  the custodian or another person authorized to make the certification; *or*
> >
> > (B)  a certificate that complies with Rule 902(1), (2), or (3), a statute, or a rule prescribed under statutory authority.[4]

---

[3]  *See* TEX. R. EVID. 902(4).

[4]  We note that prior to the restyling of the Texas Rules of Evidence, effective April 1, 2015, rule 902(4) read as follows:

24

TEX. R. EVID. 902(4) (emphasis added).  "Certified as correct" means that the copy is certified as a correct copy of the governmental record.  *Bruton v. State*, 428 S.W.3d 865, 875 (Tex. Crim. App. 2014).  The record from which the certified copy is derived need not itself be the original document, so long as the original document is also a public record.  *Id.* at 875–76.

Here, the bill of information states that on March 23, 2002, "Alfred Allen," within the jurisdiction of the Criminal District Court of Orleans Parish, did

> A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any statute or other rule prescribed pursuant to statutory authority.

TEX. R. EVID. 902(4), 61 TEX. B.J. 374, 398 (Tex. & Tex. Crim. App. 1998, amended 2015); *see* Order, Final Approval of Amendments to the Texas Rules of Evidence, Misc. Docket No. 15-001 (Tex. Crim. App. Mar. 12, 2015).  The court of criminal appeals, in its order, explained that, with limited exception, the rules were not substantively changed:

> Except for the amendments to Rules 511 and 613, which include substantive amendments, these amendments comprise a general restyling of the Texas Rules of Evidence.  They seek to make the rules more easily understood and to make style and terminology consistent throughout.  The restyling changes are intended to be stylistic only.
>
> . . . .
>
> . . . . The Texas Rules of Evidence restyling project was initiated with the aim of keeping the Texas Rules as consistent as possible with Federal Rules, *but without effecting any substantive change in Texas evidence law*.

Order, Misc. Docket No. 15-001, § 2 (emphasis added).  We apply the current version of rule 902(4) accordingly.

"illegally and intentionally procure, receive, possess or conceal . . . a Chevrolet Corsica valued at five hundred dollars or more." The computerized printout of the records of the Criminal District Court of Orleans Parish shows that on April 16, 2002, in case number 429-559, a bill of information was filed, charging "Alfred Allen, Jr." with possession of a stolen automobile valued at "over $500." The records further show that on February 12, 2003, "Alfred Allen, Jr." appeared for trial and was "found guilty" by the Honorable Frank Marullo of the offense of possession of a "stolen auto" and sentenced to "18 months, at DOC at hard labor." The extract of court minutes also states that on February 12, 2003, in case number 429-559, "defendant Alfred Allen" was sentenced to "18 months, at the Department of Corrections at hard labor." Each page of State's exhibit 17 bears a stamped certification that it is "A True Copy" from the records of the "Hon. Arthur A. Morrell," "Clerk of [the] Criminal District Court" of "Orleans Parish," and a deputy clerk's signature.

A "computer-generated compilation of information setting out the specifics of a criminal conviction that is certified as correct by the county or district clerk of the court in which the conviction was obtained is admissible under Rule 902." *Flowers v. State*, 220 S.W.3d 919, 922–23 (Tex. Crim. App. 2007). "The district clerk is the legal custodian of the originals on file in the convicting court." *Reed v. State*, 811 S.W.2d 582, 584 (Tex. Crim. App. 1991). Rule 902(4) expressly

26

provides that the person executing the certification need not be the custodian of the records so long as he is "authorized to make the certification."[5]  *See* TEX. R. EVID. 902(4); *Bruton*, 428 S.W.3d at 876.

Accordingly, we hold that the copies of the convicting court's records, which an Orleans Parish deputy clerk certified as correct, are self-authenticating. *See* TEX. R. EVID. 902(4)(A); *Martinez v. State*, No. 08-06-00107-CR, 2008 WL 1903488, at *2 (Tex. App.—El Paso Apr. 30, 2008, no pet.) (not designated for publication) (holding records of prior conviction from convicting court containing certification from Bexar County Clerk's office self-authenticating).  Appellant complains that "none of the documents in exhibit 17 contain a state seal." However, a state seal is not required for authentication.  *See* TEX. R. EVID. 902(4) (providing copy must be certified as correct by "the custodian or another person authorized to make the certification *or* a certificate that complies with Rule 902(1) [requiring seal], (2), or (3), a statute, or a rule prescribed under statutory authority" (emphasis added)).

Appellant next argues that the trial court's admission of State's exhibit 17 violated his Sixth Amendment right to confront the witnesses against him because

---

[5]  In Texas, a deputy district clerk is authorized by statute to perform in the name of the district clerk all official acts of the office of the district clerk.  *See* TEX. GOV'T CODE ANN. § 51.309(a) (Vernon 2013).

he had no "opportunity to cross-examine the Parish clerk" before trial and the State did not show that the clerk was unavailable to testify during trial.

The Confrontation Clause of the Sixth Amendment guarantees an accused the right "to be confronted with the witnesses against him" by having an opportunity to cross-examine the witnesses. U.S. CONST. amends. VI, XIV; *see also Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 1435 (1986); *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). The Confrontation Clause bars the admission of *testimonial statements* of a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him.[6] *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369 (2004); *Russeau v. State*, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005).

---

[6] Appellant asserts that there "remains an open question as to whether the [C]onfrontation [Clause] applies during the punishment phase" of trial. The Texas Court of Criminal Appeals has held that "when a PSI [pre-sentencing investigation] is used in a non-capital case in which the defendant has elected to have the judge determine sentencing," the information in the PSI is "not subject to the Confrontation Clause." *Stringer v. State*, 309 S.W.3d 42, 48 (Tex. Crim. App. 2010). What the court in *Stringer* expressly declined to address was "whether *Crawford* applies when a *jury* determines the sentence in a non-capital case." *Id.* (citing *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369 (2004) (emphasis added)); *see also Dixon v. State*, 244 S.W.3d 472, 482–83 (Tex. App.— Houston [14th Dist.] 2007, pet. ref'd) (applying Confrontation Clause during punishment phase of trial). Here, although appellant elected to have the trial court determine his sentence, the evidence at issue does not involve a PSI. We need not determine whether the Confrontation Clause applies in this case, however, because we conclude that the complained-of evidence does not contain testimonial statements.

A statement is "testimonial" if it constitutes a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51, 124 S. Ct. at 1364; *see Russeau*, 171 S.W.3d at 880. "[C]ourts that have addressed the issue of public records documenting prior convictions or other similar official findings have concluded that such records are non-testimonial and therefore beyond the prohibition of *Crawford*." *Segundo v. State*, 270 S.W.3d 79, 107 (Tex. Crim. App. 2008). These courts have "recognized [a] distinction between official records that set out a sterile and routine recitation of an official finding or unambiguous factual matter such as a judgment of conviction or a bare-bones disciplinary finding and a factual description of specific observations or events that is akin to testimony." *Id.*; *cf. Russeau*, 171 S.W.3d at 880–81 (holding jail records containing specific incident reports written by corrections officers graphically documenting detailed observations of defendant's numerous disciplinary offenses testimonial and inadmissible under *Crawford* because officers did not testify at trial).

Although appellant complains that he was denied his right to cross-examine the Parish clerk, the records at issue merely set out a sterile recitation of the proceedings in the Orleans Parish Criminal District Court, along with its official findings, judgment of conviction, and assessment of punishment. *See Segundo*, 270 S.W.3d at 107. The records do not contain testimonial statements, narratives,

29

or written observations made by the Parish clerk. *See Russeau*, 171 S.W.3d at 880. Further, appellant does not identify any specific statements as testimonial.

Accordingly, we hold that the trial court's admission of State's exhibit 17 did not violate appellant's Sixth Amendment confrontation rights.

We overrule appellant's third issue.

### Sufficiency of Punishment Evidence

In his second issue, appellant argues that the court records contained in State's exhibit 17 are legally insufficient to establish that his prior conviction was final because they do not include a "certified judgment or sentence," or the "functional equivalent," and a waiver of appeal.

We note that the State, to establish that appellant was, in fact, convicted of a prior felony offense, had to prove beyond a reasonable doubt (1) the existence of a prior conviction and (2) appellant's connection to the conviction. *Flowers*, 220 S.W.3d at 921; *see also* TEX. CODE CRIM. PROC. ANN. art. 37.07, § (3)(a)(1) (Vernon Supp. 2014). Proof of a prior conviction does not require the production of a certified judgment. *Flowers*, 220 S.W.3d at 922 (noting no "best evidence" rule exists requiring proof of previous conviction with any document, "much less any specific document."). In *Flowers*, the court explained:

> While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways, including (1) the defendant's admission or stipulation, (2) testimony by a person who

was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted.

220 S.W.3d at 921–22 (footnotes omitted). "Regardless of the type of evidentiary puzzle pieces the State offers to establish the existence of a prior conviction and its link to a specific defendant, the trier of fact determines if these pieces fit together sufficiently to complete the puzzle." *Id*. at 923. If the two necessary elements "can be found beyond a reasonable doubt, then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction." *Id*.

As noted above, the records, including the bill of information, computerized printout, and extract of court minutes, of the Orleans Parish Criminal District Court establish that on February 12, 2003, in case number 429-559, "Alfred Allen, Jr." appeared for trial and was "found guilty" by the Honorable Frank Marullo of the offense of possession of a "stolen auto" and sentenced to "18 months, at the Department of Corrections at hard labor." Further, the trial court admitted into evidence State's exhibit 20, a record, created by the Louisiana Department of Corrections, of fingerprints taken from "Alfred Allen" on February 12, 2003, related to case number 429-559. It includes appellant's birthdate, social security number, and personal descriptors. And it is certified by an authorized representative of the Deputy Secretary to be true copy of the "subject's record from

31

the files of the Bureau of Criminal Identification, Office of Louisiana State Police." Moreover, Harris County Sheriff's Deputy R. Glover, a fingerprint examiner, testified, without objection, that he compared the fingerprints contained in State's exhibit 20 with those that he took from appellant in the courtroom, and he concluded that the fingerprints contained in State's exhibit 20 were made by appellant.

In *Flowers*, the State used a "certified copy of a computer printout" from the Dallas County Clerk to establish that the defendant had been previously convicted of the offense of driving while intoxicated ("DWI"). 220 S.W.3d at 924–25. The printout set out that the defendant had been convicted on August 18, 1995 of the offense of DWI and sentenced to confinement for 45 days. *Id.* And it contained his birthdate, address, social security number, and other personal descriptors. *Id.* at 925. The trial court also admitted the defendant's driver's license record, which matched the personal information contained in the clerk's record. *Id.* The defendant challenged the use of the computer printout on the ground that it was not a certified copy of a final judgment. *Id.* at 920–21. The court of criminal appeals, in holding this evidence legally sufficient to prove that the defendant had been previously convicted as alleged, explained that "the important issue [was] not whether [the exhibit] represent[ed] a judgment of conviction or its functional equivalent," but whether a "reasonable trier of fact could view [the exhibit] and

find beyond a reasonable doubt" that the alleged prior conviction existed and was linked to the defendant. *Id.* at 924.

Here, given the information contained in State's exhibit 17 and Deputy Glover's testimony about appellant's fingerprints, the trial court could have reasonably found that appellant is, in fact, the same person who was convicted of "the felony of POSSESSION OF [A] STOLEN AUTO . . . on FEBRUARY 12, 2003, in Cause Number 429-559, in the CRIMINAL DISTRICT COURT, PARISH OF ORLEANS, LOUISIANA." *See id.* at 921; *Castle v. State*, 402 S.W.3d 895, 899–900 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding evidence, which included indictment and extract of court minutes, both certified by deputy clerk, legally sufficient to support finding defendant had prior Louisiana conviction).

Appellant further argues that the State did not prove that the Louisiana conviction is final because State's exhibit 17 "does not include a waiver of appeal" and the absence of such a waiver "raises a question as to the finality of the enhancement conviction." In support of his argument, he relies on *Henry v. State*, 331 S.W.3d 552, 555 (Tex. App.—Houston [14th Dist.] 2011, no pet.). In *Henry*, however, the court held that there was a question as to the finality of the prior conviction because the State had introduced as its evidence a prior judgment of conviction that stated on its face that a notice of appeal had been filed. *Id.* at 555–

56. The court held that when "'the State's proof of [a] prior conviction shows on its face that the conviction was appealed, the State must put on evidence that [the] mandate has issued.'" *Id.* at 556 (quoting *Ex parte Chandler*, 182 S.W.3d 350, 358 (Tex. Crim. App. 2005)). Because the State had failed to sustain its burden of proof, the conviction could not be used for enhancement purposes. *Id.*

Here, the record does not reflect that appellant challenged by appeal his Louisiana conviction. Once the State provides prima facie evidence of an enhancement conviction, as here, "this Court will presume that [the] conviction is final when faced with a silent record regarding such." *Fletcher v. State*, 214 S.W.3d 5, 8 (Tex. Crim. App. 2007); *see Johnson v. State*, 583 S.W.2d 399, 403 (Tex. Crim. App. 1979) (noting once State has introduced prima facie evidence of final conviction, "the defense has the burden of proving that the conviction was not final"). Because nothing in the record before us suggests otherwise, we presume that appellant's Louisiana conviction is final. *See Fletcher*, 214 S.W.3d at 8.

Viewing the evidence in the light most favorable to the trial court's findings, we conclude that the trial court could have reasonably found the allegation in the enhancement paragraph of the indictment true beyond a reasonable doubt. Accordingly, we hold that the evidence is legally sufficient to support the trial court's finding that the enhancement allegation is true.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).

35